IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALD M. McLAUGHLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 6906 |
| ) | Judge Der-Yeghiayan |
| RICHARD CASLER, individually and in ) | |
| his official capacity, KENNETH ) | |
| FRITZ, individually and in his official ) | |
| capacity, and the VILLAGE OF ) | |
| SCHAUMBURG, ) | |
| ) | |
| Defendants. ) | |

## ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendants, by and through their counsel, Jack M. Siegel and Iain D. Johnston, hereby state the following as their Answer to Complaint and Affirmative Defenses.

## COUNT I
## SECTION 1983 - FIRST AMENDMENT

1.  This is an action for violations of the Plaintiff's rights of free speech, his right to be free of unreasonable and arbitrary conduct, and deprivation of a property right without due process, under the First and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. §1983. This is also an action for Illinois State law claims for retaliatory discharge and tortious interference with prospective economic advantage. This Court has jurisdiction under 28 U.S.C. §1343, 42 U.S.C §1983, and under the principles of pendant jurisdiction. Venue is proper in this district because all parties reside in Cook County, Illinois.

**ANSWER:** Defendants generally admit the allegations contained in Paragraph 1 to the extent they are allegations of fact, but deny any allegations that are legal conclusions. Defendants admit that this Court possesses jurisdiction of this case and that venue is proper, but deny the existence of "pendant jurisdiction." To the extent that Plaintiff is asking this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. §1367, Defendants admit such jurisdiction exists.

2.   Plaintiff GERALD M. McLAUGHLIN is a resident of Cook County, Illinois. Plaintiff was employed by Defendant VILLAGE OF SCHAUMBURG as a Professional Standards Manager at all times relevant to this complaint until his termination on or about December 8, 2005.

**ANSWER:**   Defendants admit.

3.   Defendant RICHARD CASLER has been the Director of Police for the VILLAGE OF SCHAUMBURG at all times relevant to this complaint. CASLER was Plaintiff's direct supervisor. CASLER resides in Schaumburg, Illinois.

**ANSWER:**   Defendants admit the allegations of Paragraph 3, except Plaintiff's allegation regarding Casler being Plaintiff's direct supervisor.

4.   Defendant KENNETH J. FRITZ has been the Village Manager for the VILLAGE OF SCHAUMBURG at all times relevant to this complaint. FRITZ was Plaintiff's second-level supervisor and was proposing to become Plaintiff's direct supervisor at the time Plaintiff was terminated. FRITZ resides in Schaumburg, Illinois.

**ANSWER:**   Defendants admit the allegations of Paragraph 4, except Plaintiff's allegation regarding Fritz being Plaintiff's second-level supervisor.

5.   Defendant, VILLAGE OF SCHAUMBURG (hereinafter referred to the "VILLAGE"), is a municipal corporation organized under the laws of the State of Illinois.

**ANSWER:**   Defendants admit.

6.   Plaintiff was hired by Defendant VILLAGE in 2001 as the Professional Standards Manager for Defendant VILLAGE's Office of Professional Standards (OPS). In that capacity, Plaintiff was responsible for investigating complaints made by citizens against the VILLAGE's police officers and for performing Department Inspections. Plaintiff was also responsible for conducting background investigations of candidates for the VILLAGE's police department and fire department, and performing inspections of various VILLAGE departments.

2

**ANSWER:** Defendants admit the allegations in Paragraph 6, except to the extent this paragraph alleges that Plaintiff performed inspections of departments other than the Police Department, which they deny.

7. Throughout his employment with VILLAGE, Plaintiff received highly satisfactory performance evaluations and was praised by all of his supervisors. He implemented several improvements in OPS to better manage its investigation process and caseload, implemented ethics training for police officers and employees, and implemented an early warning tracking system which allowed for the early detection of officers who may be at risk in their performance in order to assist these officers before any serious issues developed. All of these changes increased the productivity and performance of OPS, improved public confidence in the police department, and reduced the number of complaints filed by the public against police officers. These accomplishments also saved the VILLAGE and taxpayers money and allowed the VILLAGE to retain its accreditation from the Commission on Accreditation for Law Enforcement.

**ANSWER:** Defendants admit the allegations in Paragraph 7, except Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in the last two sentences of Paragraph 7 and Plaintiff's allegation that he "was praised by all of his supervisors."

8. As a result of the accomplishments of OPS under Plaintiff's management, CASLER, and FRITZ, among others, proposed in or about October of 2005, that OPS be expanded to cover all VILLAGE employees. Under this proposal, Plaintiff would be responsible for investigating complaints against all VILLAGE employees, and applying the early warning system and ethics training to all VILLAGE employees. Defendants also proposed relocating OPS to a different building and having Plaintiff directly supervised by the Village Manager FRITZ.

**ANSWER:** Defendants admit the allegations in Paragraph 8, except Defendants deny that Plaintiff's alleged accomplishments caused or resulted in the proposal that OPS be expanded to cover all Village employees and that the decision had been made at that time to apply the early warning system to all Village employees and provide ethics training for all Village employees.

9. After Defendants discussed the expansion of OPS and Plaintiff's duties to cover all VILLAGE employees, Plaintiff learned that the new office space would not be adequate for the expanded responsibilities of OPS. The new location would limit the access of residents who wished to make complains about officers or employees and the new location would not be large enough to safely store the increased number of confidential investigative files for which OPS would be responsible. The resources that would be provided to OPS would also not be sufficient to perform the expanded duties.

**ANSWER:** Defendants deny the allegations in Paragraph 9, except as to what Plaintiff allegedly "learned," and as to that allegation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment.

10. Plaintiff was concerned that relocating to the new location and unwillingness to provide sufficient support and resources for OPS's increased workload would have an adverse impact on the ability of OPS to investigate in a timely and adequate manner complaints filed by residents against police and other Village employees, hinder and delay the ability of OPS to perform background investigations on police and fire candidates who were needed to fill vacancies, severely limit the ability to adequately monitor at risk employees, and limit the ability to provide adequate ethics training to all employees.

**ANSWER:** Defendants deny the allegations in Paragraph 10, except as to Plaintiff's alleged "concern," and as to that allegation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment.

11. Plaintiff was concerned that the limited hours of when residents could make complaints in the new location and the delays to timely complete investigations due to inadequate resources would discourage residents from making complaints. Collectively, these problems would reduce public confidence in the police force, adversely affect moral in the fire and police department, delay the imposition of corrective discipline of police and other employees, thereby allowing them to continue interacting with the public, and delay the filling of police and fire vacancies, thereby putting increased strain on the police and fire departments' ability to serve the residents. The proposed changes could also jeopardize the VILLAGE's accreditation with the Commission on Accreditation for Law Enforcement, which allows the VILLAGE to obtain lower insurance premiums for liability insurance and saves taxpayers money. These proposed changes would also interfere with Illinois State law requirements to properly investigate allegations of police misconduct and with the obligations under state law for the Board of Police and Fire Commissioners to hire qualified candidates for positions with the police and fire departments to better serve the public.

**ANSWER:** Defendants deny the allegations in Paragraph 11, except as to Plaintiff's alleged "concern," and as to that allegation, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averment.

    12.    In November of 2005, Plaintiff expressed his concerns to a VILLAGE Trustee and to the Chairman of the Board of Police and Fire Commissioners. Neither the Trustee nor the Chairman supervised Plaintiff. Plaintiff expressed these concerns to these two individuals as an individual who was concerned about the residents of the VILLAGE, the VILLAGE itself, and its public employees. Expressing these concerns to these individuals was not within the scope of his duties.

**ANSWER:** Defendants admit that in about November 2005, Plaintiff initiated contact with a Trustee and the Chairman regarding his opinions and that the Trustee was not a direct supervisor of Plaintiff, but deny all remaining averments in Paragraph 12, and affirmatively state that Plaintiff is not a resident of the Village of Schaumburg, and that Plaintiff was directly supervised by the Chairman in Plaintiff's role in conducting background investigations for police and fire recruits.

    13.    When FRITZ and CASLER learned that Plaintiff had brought these concerns about how the proposed changes would affect the public to the Trustee and Chairman of the Board of Police and Fire Commissioners, they questioned Plaintiff on or about November 16, 2005, regarding what he told these individuals. On or about November 29, 2005, FRITZ and CASLER asked Plaintiff to provide a more detailed statement as to what he told the Trustee and Chairman. Defendants did not indicate that Plaintiff was being investigated for any wrongdoing at the time they asked for this information.

**ANSWER:** Defendants admit that when they learned that Plaintiff had initiated contact with a Trustee and Chairman about his opinions, Plaintiff was asked about the events, and admit that Plaintiff was not told he was being investigated at that time because there was no requirement to do so, but deny all remaining allegations in Paragraph 13.

5

14. On or about December 2, 2005, CASLER told Plaintiff for the first time that he may be terminated for his communications with the Trustee and Chairman of the Board of Police and Fire Commissioners. On December 8, 2005, CASLER told Plaintiff that he was being terminated because Plaintiff made FRITZ, CASLER, and other "look bad" by expressing his concerns about how the proposed changes to OPS may adversely affect the residents of the VILLAGE, the VILLAGE itself, and its public employees. Defendants also claimed that their review of Plaintiff's conversation with the Trustee and Chairman indicated that Plaintiff had integrity issues. The VILLAGE had decided not to go forward with all of the proposed changes to OPS after Plaintiff expressed his concerns to the Trustee and Chairman.

**ANSWER:** Defendants Village and Casler admit that in early December when Plaintiff asked, Casler informed Plaintiff that the allegations that Plaintiff initiated contact with the Trustee and Chairman were serious and admits that he told Plaintiff that Plaintiff was being terminated and that integrity issues existed, but deny all remaining allegations in the first three sentences of Paragraph 14. Defendant Fritz is without knowledge or information sufficient to form a belief as to what Casler told Plaintiff in early December 2005, but admits that Plaintiff was told he was being terminated and denies all remaining allegations in the first three sentences of Paragraph 14. All Defendants deny the last sentence of Paragraph 14, except to the extent that the Defendant did not proceed with the proposed changes benefiting Plaintiff personally, such as providing a Village vehicle and a $22,000 a year raise.

15. Defendants' stated reasons for terminating Plaintiff for alleged integrity issues were false. Defendants terminated Plaintiff in retaliation for speaking openly about how the proposed changes would have an adverse impact on the VILLAGE and its residents. Plaintiff raised these issues as a concerned citizen on behalf of the residents of the VILLAGE.

**ANSWER:** Defendants deny.

16. Defendants knowingly relied on these false claims against Plaintiff as a pretext for terminating him on December 8, 2005. FRITZ and CASLER had the final authority to terminate Plaintiff on behalf of the VILLAGE. As Director of Police and as VILLAGE manager, CASLER and FRITZ were delegated with the final decision authority and final policymaking authority to terminate Plaintiff and to make decisions that affected OPS.

6

**ANSWER:** Defendants deny the factual allegations and legal conclusions contained in Paragraph 16.

17. FRITZ and CASLER misused their positions with the VILLAGE to personally retaliate against Plaintiff and committed these actions under color of state law. Defendants knew that their actions violated the law and took these actions because they were embarrassed when Plaintiff expressed his concerns about the proposed changes for OPS to other individuals.

**ANSWER:** Defendants deny.

18. The Defendants' actions violated 42 U.S.C §1983 because they were taken in retaliation against Plaintiff's exercise of his rights under the First and Fourteenth Amendments and Defendants attempted to prevent him from exercising his rights under the First and Fourteenth Amendment through their retaliatory conduct. The Defendants' actions had a chilling effect on Plaintiff's speech and expression of ideas in violation of the First and Fourteenth Amendment.

**ANSWER:** Defendants deny.

19. As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 19.

20. The acts, conduct, and behavior of the individual Defendants were performed knowingly, intentionally, and maliciously. Plaintiff is entitled to an award of punitive damages against the individual Defendants FRITZ and CASLER because they knew or should have known that their actions violated the law.

**ANSWER:** Defendants deny.

21. Plaintiff demands a jury trial.

**ANSWER:** Defendants admit.

## COUNT II
## SECTION 1983 - DUE PROCESS

1-18.   Plaintiff realleges ¶¶1 through 14 of Count I as ¶¶1 through 18 of this Count II.

**ANSWER:**   Defendants re-state and re-allege their answers as if fully stated herein.

19.   The Defendant VILLAGE maintains a set of mandatory administrative rules and procedures that provide all employees, except probationary and seasonal employees, with the right to a formal investigation and administrative review procedure. These mandatory rules include Corrective Action Procedures, Administrative Protocols, and Internal Investigations procedures for employees. Defendant has applied these rules and procedures to all employees, including the Chief or Director Police and to the Police Administrative Manager when they were accused of alleged misconduct, and should have applied these rules to Plaintiff.

**ANSWER:**   Defendants deny.

20.   The Administrative Protocol requires that an investigation be conducted for any complaint made against an employee and that a formal written corrective action recommendation be prepared. The Corrective Action Procedure requires that Defendants must adhere to progressive discipline except in the case of "major" violations such as fraud or use of illegal drugs and provides a grievance procedure. The Internal Investigations procedures provide for a formal investigative process and Administrative Review. This includes preparing a written Report of Inquiry documenting the investigation, issuing the employee with a Notification of Investigation and Rights Prior to Investigation Form and questioning the employee using an audio record.

**ANSWER:**   Defendants deny.

21.   Though Defendants have followed these mandatory procedures in other cases such as with the Chief or Director of Police and the Police Administrative Manager, Defendants failed to adhere to these procedures before or at the time they terminated Plaintiff. When Plaintiff was asked to inform CASLER about what he had said to the Trustee and Chairman, Plaintiff was not told that there was any potential discipline being considered or that he was under any type of investigation, or follow any other of the mandatory procedures that limited the method, ability and circumstances under which Plaintiff could be disciplined or terminated. Further, Defendants violated its mandatory procedures for progressive discipline when it terminated Plaintiff though he had no prior discipline and was not being charged with a "major" offense.

**ANSWER:**   Defendants deny.


22.   The VILLAGE's mandatory procedures as alleged above applied to Plaintiff and gave Plaintiff a property interest in his position. The Defendants violated 42 U.S.C. 1983 by terminating Plaintiff and depriving him of his property interest without due process through their failure to adhere to these mandatory procedures and for terminating him without due process in retaliation for exercising his rights to free speech under the First and Fourteenth Amendments.

**ANSWER:**   Defendants deny.


23.   Defendants knowingly relied on these false claims against Plaintiff as a pretext for terminating him on December 8, 2005 without due process. FRITZ and CASLER has the final authority to terminate Plaintiff on behalf of the VILLAGE. As Director of police and as VILLAGE manager, CASLER and FRITZ were delegated with the final decision authority and final policymaking authority to terminate Plaintiff and to make decisions that affected OPS.

**ANSWER:**   Defendants deny.


24.   FRITZ and CASLER misused their positions with the VILLAGE in depriving him of his property rights without due process in order to personally retaliate against Plaintiff and they committed these actions under color of state law. Defendants knew that their actions violated the law and took these actions because they were embarrassed with Plaintiff expressed his concerns about the proposed changes to OPS to other individuals.

**ANSWER:**   Defendants deny.


25.   As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 25.


26.   The acts, conduct, and behavior of the individual Defendants were performed knowingly, intentionally, and maliciously. Plaintiff is entitled to an award of punitive damages against the individual Defendants FRITZ and CASLER because they knew or should have known that their actions violated the law.

**ANSWER:** Defendants deny.

27. Plaintiff demands a jury trial.

**ANSWER:** Defendants admit.

## COUNT III
## RETALIATORY DISCHARGE AGAINST THE VILLAGE

1-15. Plaintiff realleges ¶¶1 through 14 of Count I as ¶¶1 through 14 of this Count III.

**ANSWER:** Defendants re-state and re-allege their answers as if fully stated herein.

16. The State of Illinois has an important public policy to insure that complaints against police officers are properly investigated in accordance with the Uniform Peace Offices' Disciplinary Act. The State of Illinois also has an important public policy in insuring that only properly qualified applicants for a town or village police and fire department are hired and retained for these positions in accordance with state law. The State of Illinois also has an important public policy in having villages and towns maintain a professional police department and Defendant VILLAGE tried to accomplish this by obtaining accreditation through the Commission on Accreditation for Law Enforcement. This accreditation process requires a system such as OPS to conduct internal investigations as to alleged police misconduct.

**ANSWER:** Defendants deny the legal conclusions contained in Paragraph 16.

17. Defendant VILLAGE, through its duly authorized agents, FRITZ and CASLER, terminated Plaintiff in retaliation for expressing his concerns to the VILLAGE Trustee and Chairman of the Board of Police and Fire Commissioners that the proposed changes may interfere with and prevent OPS from meeting these public policy goals as described above. Defendant VILLAGE also violated Plaintiff's free speech rights by this retaliatory discharge as the State of Illinois has a policy of encouraging free speech about matters of public concern.

**ANSWER:** Defendants deny.

18. Defendant VILLAGE terminated Plaintiff based solely on malice and ill will against Plaintiff because Defendant VILLAGE was embarrassed by Plaintiff's complaints and some of the proposed changes for OPS were cancelled or delayed due to Plaintiff's complaints.

10

Defendant was also concerned that Plaintiff's complaints could jeopardize its accreditation which allows Defendant to obtain lower insurance premiums for liability insurance. Defendant willfully made false allegations against Plaintiff's integrity which it knew to be false when it terminated him in retaliation for his complaints of how Defendant's proposed plans could violate important public policy goals of the State of Illinois, and in violation of his rights to free speech about matters of public concern.

**ANSWER:**   Defendants deny.

19.   As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 19.

20.   Plaintiff demands a jury trial.

**ANSWER:**   Defendants admit.

### COUNT IV
### TORTIOUS INTERFERENCE WITH THE PROSPECTIVE ECONOMIC ADVANTAGE AS TO CASLER AND FRITZ

1-16.   Plaintiff realleges ¶¶1 through 16 of Count III above, as ¶¶1 through 15 of this Count IV.

**ANSWER:**   Defendants re-state and re-allege their answers as if fully stated herein.

17.   When Plaintiff made his objections known to the VILLAGE Trustee and Chairman of the Board of Police and Fire Commissioners, the VILLAGE subsequently postponed the plans of FRITZ and CASLER to relocate OPS and increase the scope of OPS's duties. CASLER warned Plaintiff that his complaints and expressions of concerns made both FRITZ and CASLER "look bad" and this had now become a "political" issue.

**ANSWER:**   Defendants deny.

18. FRITZ and CASLER caused Plaintiff's termination based solely on malice and ill will against because his complaints about their proposed changes made them "look bad" and embarrassed them. These Defendants acted outside the scope of their employment with the VILLAGE and acted completely against the best interests of the VILLAGE by falsely causing Plaintiff's termination based on an alleged lack of integrity which they knew to be false since they admitted that the real reason was because Plaintiff's complaints made them "look bad".

**ANSWER:** Defendants deny.

19. Defendant knew that the VILLAGE and State of Illinois had an express policy of recognizing the rights of free speech of its employees and the prohibition of taking any retaliatory action against Plaintiff for exercising his rights of free speech. Defendants intentionally violated and ignored that policy and acted in knowing violation of Federal civil rights law when they tortiously interfered with Plaintiff's free speech and retaliated against Plaintiff for expressing his reasonable concerns about Defendants' proposed changes.

**ANSWER:** Defendants admit the first sentence of Paragraph 19, but deny all remaining allegations.

20. As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 20.

21. Plaintiff demands a jury trial.

**ANSWER:** Admit.

## AFFIRMATIVE DEFENSES

1. The individual defendants are entitled to qualified immunity as to Plaintiff's claims brought pursuant to Section 1983, specifically Counts I and II.

2.	Count III, which is solely against Defendant Village of Schaumburg, is barred by the Local Government and Local Governmental Employees Tort Immunity Act.

3.	Count IV, which is only against Defendant Fritz and Defendant Casler, is barred by the Local Government and Local Governmental Employees Tort Immunity Act and public officials immunity.

4.	Plaintiff fails to state a claim upon which relief can be granted.

## JURY DEMAND

Defendants demand a trial by jury for all issues so triable.

s/ Iain D. Johnston

Iain Johnston
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, Illinois 60603
(312) 263-3600

# 5004760_v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GERALD M. McLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6906 |
| | ) | Judge Der-Yeghiayan |
| RICHARD CASLER, individually and in his official capacity, KENNETH FRITZ, individually and in his official capacity, and the VILLAGE OF SCHAUMBURG, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

NOTICE OF FILING

To: Arthur R. Ehrlich
Goldman & Ehrlich
19 South La Salle Street
Suite 1500
Chicago, IL 60603

PLEASE TAKE NOTICE that on February 14, 2008, we filed electronically with the Clerk of the United States District Court For the Northern District of Illinois Answer to Complaint and Affirmative Defenses.

Respectfully submitted,
Village of Schaumburg

By: s/ Iain D. Johnston

Jack M. Siegel
Iain D. Johnston
Holland & Knight LLP
131 S. Dearborn Street
30th Floor
Chicago, Illinois 60603
(312) 263-3600

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a true and correct copy of the foregoing Notice of Filing together with Answer to Complaint and Affirmative Defenses were served electronically on the following attorneys:

> Arthur R. Ehrlich
> Goldman & Ehrlich
> 19 South La Salle Street
> Suite 1500
> Chicago, IL  60603

on February 14, 2008.

s/ Iain D. Johnston

# 5124783_v1