IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **GERALD M. McLAUGHLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 07 C 6906** |
| | ) | **Judge Der-Yeghiayan** |
| **RICHARD CASLER, individually and in** | ) | |
| **his official capacity, KENNETH** | ) | |
| **FRITZ, individually and in his official** | ) | |
| **capacity, and the VILLAGE OF** | ) | |
| **SCHAUMBURG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants, by and through their counsel, Jack M. Siegel and Iain D. Johnston, hereby move for judgment on the pleadings as to Counts III and IV of Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(c). In support of this Motion, Defendants state the following.

## I. INTRODUCTION

Plaintiff's Complaint contains four (4) counts. The first two (2) counts are brought pursuant to 42 U.S.C. §1983. The second two counts are supplemental state-law claims: a count for retaliatory discharge against the Village of Schaumburg ("Village") and a count for tortious interference with prospective economic advantage against the Village Manager Ken Fritz ("Fritz") and Director of Police Richard Casler ("Casler"). According to Counts III and IV of Plaintiff's Complaint, Plaintiff was discharged for allegedly speaking to a Village Trustee and the Chairman of the Board and Fire Police Commissioners about changes to the Village's Office of Professional Standards. (Comp. Ct. III at ¶¶17, 18, Ct. IV at ¶¶18, 19.)[1]

---

[1] A copy of Defendants' Answer and Affirmative Defenses is attached to this motion for the Court's convenience. *See* Ex. #1.

This Motion seeks judgment on the two (2) supplemental state-law claims. Both counts are barred by the clear language of the Local Governmental and Local Governmental Employees Tort Immunity Act ("Act"). 745 ILCS 10/1-101 *et seq.* The Illinois Appellate Court and various U.S. District Courts in Illinois have held that retaliatory discharge and tortious interference with prospective economic advantage claims are barred by the Act. *See, e.g., Downery v. Shonkwiler*, 2005 U.S. Dist. LEXIS 29475, *11-13 (C.D. Ill. 2005) (Act bars tortious interference claim) (Ex. #2); *Ellis v. Chicago*, 272 F.Supp.2d 729, 735-36 (N.D. Ill. 2003) (Act bars retaliatory discharge claim); *Anderson v. Grayslake School Dist.*, 1997 U.S. Dist. LEXIS 15980, *2-4 (N.D. Ill. 1997) (Act bars retaliatory discharge claim) (Ex. #3); *Smith v. Waukegan Park Dist.*, 373 Ill.App.3d 626, 630, 869 N.E.2d 1093, 1097 (2nd Dist. 2007) *petition for leave to appeal granted* 875 N.E.2d 1124 (Ill. 2007) (Act bars retaliatory discharge claim).

## II. STANDARD ON A MOTION FOR JUDGMENT ON THE PLEADINGS

Now that the pleadings are closed and Defendants have filed an answer to Plaintiff's Complaint, Defendants can move for judgment on the pleadings. Fed.R.Civ.P. 12(c); *Forseth v. A&R Land Co.*, 199 F.3d 363, 367 (7th Cir. 2000). Because Defendants are attacking the substance of Plaintiffs' claims – contending that the claims are barred by the Act -- this Court should apply a summary judgment type of standard to this motion. *Alexander v. Chicago*, 994 F.2d 333, 335-36 (7th Cir. 1993). Under this standard, Defendants are entitled to judgment on the pleadings because they are not disputing Plaintiff's allegations, but Defendants are nevertheless entitled to judgment as a matter of law. *Id.*

### III. PLAINTIFF'S CLAIMS FOR RETALIATORY DISCHARGE AND TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ARE BARRED BY THE LOCAL GOVERNMENTAL AND LOCAL GOVERNMENTAL EMPLOYEES TORT IMMUNITY ACT.

The Act bars both Plaintiff's retaliatory discharge claim and his claim for tortious interference with prospective economic advantage. These claims are barred by the plain language of the Act and established case law. Fundamentally, the Act bars both claims under Sections 2-109 and 2-201. 745 ILCS 10/2-109, 10/2-201. Section 2-201 provides that local governmental employees cannot be liable for injuries when they are exercising their discretion. 745 ILCS 10/2-201. Terminating employees, even if claimed to be done in willful and wanton violation of the employees' rights, is discretionary. *See Moore v. Board of Ed.*, 300 F. Supp. 2d 641, 644-45 (N.D. Ill. 2004) (claim barred by Act because employment decisions are discretionary); *Ellis*, 272 F. Supp. 2d at 735-36; *Johnson v. Mers*, 279 Ill.App.3d 372, 380-81, 664 N.E.2d 668, 675-76 (2nd Dist. 1996) (hiring and firing decisions are discretionary and immune under Act). Additionally, a local government cannot be liable for an injury if its employees are not liable. 745 ILCS 10/2-109; *Anderson*, 1997 U.S. Dist. LEXIS 15980 at *4 (because school board members immune under Act for termination decision, board also immune under Section 2-109). Essentially, the employees' immunity immunizes the local government. Accordingly, the Act bars the claim against the Fritz and Casler as well as the claim against the Village.

### A.     PLAINTIFF'S RETALIATORY DISCHARGE CLAIM IS BARRED.

Plaintiff claims that the Village is liable under the tort of retaliatory discharge because the Village through its agents, Fritz and Casler, terminated him "based solely on malice and ill will." (Comp. Ct. III at ¶¶17, 18). However, because termination decisions are discretionary, neither Fritz or Casler could be liable for a claim of retaliatory discharge. *Ellis*, 272 F. Supp. 2d at 735-

36; *Anderson*, 1997 U.S. Dist. LEXIS 15980 at *4; *see also Sanchez v. Cicero*, 2007 U.S. Dist. LEXIS 19097, *12-13 (N.D. Ill. 2007) (finding Act barred claim against Town because employment decisions are discretionary) (Ex. #4). And because Fritz and Casler cannot be liable under a retaliatory discharge theory, the Village cannot be held liable. 745 ILCS 10/2-109; *Ellis*, 272 F. Supp. 2d at 735-36; *Smith*, 373 Ill.App.3d at 630, 869 N.E.2d at 1097 (dismissing retaliatory discharge claims against local government). Accordingly, the Village is entitled to judgment on the pleadings as to Count III.

### B. PLAINTIFF'S TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE CLAIM IS BARRED.

For essentially the same reasons, the Act bars Plaintiff's claim against Fritz and Casler. Plaintiff alleges that both Fritz and Casler made the decision to terminate him. (Comp. Ct. IV at ¶18) Assuming this allegation is true for purposes of this Motion, the decision to terminate Plaintiff was discretionary, even if, as Plaintiff erroneously alleges, the decision was done for an improper purpose. (Comp. Ct. IV at ¶18) In *Downey v. Shonkwiler*, 2005 U.S. Dist. LEXIS 29475, *13 (C.D. Ill. 2005), the District Court found that the Act barred the plaintiff's claim for tortious interference with prospective economic advantage. The *Downey* court held that because the decision to terminate someone's employment is a discretionary act, even if done with willful and wanton motives, the Act barred the same type of claim Plaintiff alleges here. *Downey*, 2005 U.S. Dist. LEXIS at *13-17. Therefore, Fritz and Casler are entitled to judgment on the pleadings as to Count IV.

## IV. CONCLUSION

Plaintiff's claims under Counts III and IV are barred by the Act.  Consequently, this Court should grant Defendants' Motion for Judgment on the Pleadings as to these counts.

Respectfully submitted,

s/ Iain D. Johnston

Iain Johnston
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, Illinois  60603
(312) 263-3600

# 5132068_v1

**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GERALD M. McLAUGHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6906 |
| | ) | Judge Der-Yeghiayan |
| RICHARD CASLER, individually and in | ) | |
| his official capacity, KENNETH | ) | |
| FRITZ, individually and in his official | ) | |
| capacity, and the VILLAGE OF | ) | |
| SCHAUMBURG, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendants, by and through their counsel, Jack M. Siegel and Iain D. Johnston, hereby

state the following as their Answer to Complaint and Affirmative Defenses.

## COUNT I
## SECTION 1983 - FIRST AMENDMENT

1.    This is an action for violations of the Plaintiff's rights of free speech, his right to
be free of unreasonable and arbitrary conduct, and deprivation of a property right without due
process, under the First and Fourteenth Amendments to the United States Constitution, and under
42 U.S.C. §1983. This is also an action for Illinois State law claims for retaliatory discharge and
tortious interference with prospective economic advantage. This Court has jurisdiction under 28
U.S.C. §1343, 42 U.S.C §1983, and under the principles of pendent jurisdiction. Venue is proper
in this district because all parties reside in Cook County, Illinois.

**ANSWER:**    Defendants generally admit the allegations contained in Paragraph 1 to the extent

they are allegations of fact, but deny any allegations that are legal conclusions. Defendants

admit that this Court possesses jurisdiction of this case and that venue is proper, but deny the

existence of "pendant jurisdiction." To the extent that Plaintiff is asking this Court to exercise

supplemental jurisdiction pursuant to 28 U.S.C. §1367, Defendants admit such jurisdiction

exists.

2.     Plaintiff GERALD M. McLAUGHLIN is a resident of Cook County, Illinois. Plaintiff was employed by Defendant VILLAGE OF SCHAUMBURG as a Professional Standards Manager at all times relevant to this complaint until his termination on or about December 8, 2005.

**ANSWER:**   Defendants admit.

3.     Defendant RICHARD CASLER has been the Director of Police for the VILLAGE OF SCHAUMBURG at all times relevant to this complaint. CASLER was Plaintiff's direct supervisor. CASLER resides in Schaumburg, Illinois.

**ANSWER:**   Defendants admit the allegations of Paragraph 3, except Plaintiff's allegation

regarding Casler being Plaintiff's direct supervisor.

4.     Defendant KENNETH J. FRITZ has been the Village Manager for the VILLAGE OF SCHAUMBURG at all times relevant to this complaint. FRITZ was Plaintiff's second-level supervisor and was proposing to become Plaintiff's direct supervisor at the time Plaintiff was terminated. FRITZ resides in Schaumburg, Illinois.

**ANSWER:**   Defendants admit the allegations of Paragraph 4, except Plaintiff's allegation

regarding Fritz being Plaintiff's second-level supervisor.

5.     Defendant, VILLAGE OF SCHAUMBURG (hereinafter referred to the "VILLAGE"), is a municipal corporation organized under the laws of the State of Illinois.

**ANSWER:**   Defendants admit.

6.     Plaintiff was hired by Defendant VILLAGE in 2001 as the Professional Standards Manager for Defendant VILLAGE's Office of Professional Standards (OPS). In that capacity, Plaintiff was responsible for investigating complaints made by citizens against the VILLAGE's police officers and for performing Department Inspections. Plaintiff was also responsible for conducting background investigations of candidates for the VILLAGE's police department and fire department, and performing inspections of various VILLAGE departments.

2

**ANSWER:**   Defendants admit the allegations in Paragraph 6, except to the extent this

paragraph alleges that Plaintiff performed inspections of departments other than the Police

Department, which they deny.

7.    Throughout his employment with VILLAGE, Plaintiff received highly satisfactory performance evaluations and was praised by all of his supervisors. He implemented several improvements in OPS to better manage its investigation process and caseload, implemented ethics training for police officers and employees, and implemented an early warning tracking system which allowed for the early detection of officers who may be at risk in their performance in order to assist these officers before any serious issues developed. All of these changes increased the productivity and performance of OPS, improved public confidence in the police department, and reduced the number of complaints filed by the public against police officers. These accomplishments also saved the VILLAGE and taxpayers money and allowed the VILLAGE to retain its accreditation from the Commission on Accreditation for Law Enforcement.

**ANSWER:**   Defendants admit the allegations in Paragraph 7, except Defendants are without

knowledge or information sufficient to form a belief as to the truth of the averments in the last

two sentences of Paragraph 7 and Plaintiff's allegation that he "was praised by all of his

supervisors."

8.    As a result of the accomplishments of OPS under Plaintiff's management, CASLER, and FRITZ, among others, proposed in or about October of 2005, that OPS be expanded to cover all VILLAGE employees. Under this proposal, Plaintiff would be responsible for investigating complaints against all VILLAGE employees, and applying the early warning system and ethics training to all VILLAGE employees. Defendants also proposed relocating OPS to a different building and having Plaintiff directly supervised by the Village Manager FRITZ.

**ANSWER:**   Defendants admit the allegations in Paragraph 8, except Defendants deny that

Plaintiff's alleged accomplishments caused or resulted in the proposal that OPS be expanded to

cover all Village employees and that the decision had been made at that time to apply the early

warning system to all Village employees and provide ethics training for all Village employees.

9.      After Defendants discussed the expansion of OPS and Plaintiff's duties to cover all VILLAGE employees, Plaintiff learned that the new office space would not be adequate for the expanded responsibilities of OPS.  The new location would limit the access of residents who wished to make complains about officers or employees and the new location would not be large enough to safely store the increased number of confidential investigative files for which OPS would be responsible.  The resources that would be provided to OPS would also not be sufficient to perform the expanded duties.

**ANSWER:**   Defendants deny the allegations in Paragraph 9, except as to what Plaintiff

allegedly "learned," and as to that allegation, Defendants are without knowledge or information

sufficient to form a belief as to the truth of the averment.


10.      Plaintiff was concerned that relocating to the new location and unwillingness to provide sufficient support and resources for OPS's increased workload would have an adverse impact on the ability of OPS to investigate in a timely and adequate manner complaints filed by residents against police and other Village employees, hinder and delay the ability of OPS to perform background investigations on police and fire candidates who were needed to fill vacancies, severely limit the ability to adequately monitor at risk employees, and limit the ability to provide adequate ethics training to all employees.

**ANSWER:**   Defendants deny the allegations in Paragraph 10, except as to Plaintiff's alleged

"concern," and as to that allegation, Defendants are without knowledge or information sufficient

to form a belief as to the truth of the averment.


11.      Plaintiff was concerned that the limited hours of when residents could make complaints in the new location and the delays to timely complete investigations due to inadequate resources would discourage residents from making complaints.  Collectively, these problems would reduce public confidence in the police force, adversely affect moral in the fire and police department, delay the imposition of corrective discipline of police and other employees, thereby allowing them to continue interacting with the public, and delay the filling of police and fire vacancies, thereby putting increased strain on the police and fire departments' ability to serve the residents.  The proposed changes could also jeopardize the VILLAGE's accreditation with the Commission on Accreditation for Law Enforcement, which allows the VILLAGE to obtain lower insurance premiums for liability insurance and saves taxpayers money.  These proposed changes would also interfere with Illinois State law requirements to properly investigate allegations of police misconduct and with the obligations under state law for the Board of Police and Fire Commissioners to hire qualified candidates for positions with the police and fire departments to better serve the public.

4

**ANSWER:**   Defendants deny the allegations in Paragraph 11, except as to Plaintiff's alleged

"concern," and as to that allegation, Defendants are without knowledge or information sufficient

to form a belief as to the truth of the averment.

12.    In November of 2005, Plaintiff expressed his concerns to a VILLAGE Trustee
and to the Chairman of the Board of Police and Fire Commissioners.  Neither the Trustee nor the
Chairman supervised Plaintiff.  Plaintiff expressed these concerns to these two individuals as an
individual who was concerned about the residents of the VILLAGE, the VILLAGE itself, and its
public employees.  Expressing these concerns to these individuals was not within the scope of his
duties.

**ANSWER:**   Defendants admit that in about November 2005, Plaintiff initiated contact with a

Trustee and the Chairman regarding his opinions and that the Trustee was not a direct supervisor

of Plaintiff, but deny all remaining averments in Paragraph 12, and affirmatively state that

Plaintiff is not a resident of the Village of Schaumburg, and that Plaintiff was directly supervised

by the Chairman in Plaintiff's role in conducting background investigations for police and fire

recruits.

13.    When FRITZ and CASLER learned that Plaintiff had brought these concerns
about how the proposed changes would affect the public to the Trustee and Chairman of the
Board of Police and Fire Commissioners, they questioned Plaintiff on or about November 16,
2005, regarding what he told these individuals.  On or about November 29, 2005, FRITZ and
CASLER asked Plaintiff to provide a more detailed statement as to what he told the Trustee and
Chairman.  Defendants did not indicate that Plaintiff was being investigated for any wrongdoing
at the time they asked for this information.

**ANSWER:**   Defendants admit that when they learned that Plaintiff had initiated contact with a

Trustee and Chairman about his opinions, Plaintiff was asked about the events, and admit that

Plaintiff was not told he was being investigated at that time because there was no requirement to

do so, but deny all remaining allegations in Paragraph 13.

14.    On or about December 2, 2005, CASLER told Plaintiff for the first time that he may be terminated for his communications with the Trustee and Chairman of the Board of Police and Fire Commissioners.  On December 8, 2005, CASLER told Plaintiff that he was being terminated because Plaintiff made FRITZ, CASLER, and other "look bad" by expressing his concerns about how the proposed changes to OPS may adversely affect the residents of the VILLAGE, the VILLAGE itself, and its public employees.  Defendants also claimed that their review of Plaintiff's conversation with the Trustee and Chairman indicated that Plaintiff had integrity issues.  The VILLAGE had decided not to go forward with all of the proposed changes to OPS after Plaintiff expressed his concerns to the Trustee and Chairman.

**ANSWER:**    Defendants Village and Casler admit that in early December when Plaintiff asked,

Casler informed Plaintiff that the allegations that Plaintiff initiated contact with the Trustee and

Chairman were serious and admits that he told Plaintiff that Plaintiff was being terminated and

that integrity issues existed, but deny all remaining allegations in the first three sentences of

Paragraph 14.  Defendant Fritz is without knowledge or information sufficient to form a belief as

to what Casler told Plaintiff in early December 2005, but admits that Plaintiff was told he was

being terminated and denies all remaining allegations in the first three sentences of Paragraph 14.

All Defendants deny the last sentence of Paragraph 14, except to the extent that the Defendant

did not proceed with the proposed changes benefiting Plaintiff personally, such as providing a

Village vehicle and a $22,000 a year raise.


15.    Defendants' stated reasons for terminating Plaintiff for alleged integrity issues were false.  Defendants terminated Plaintiff in retaliation for speaking openly about how the proposed changes would have an adverse impact on the VILLAGE and its residents.  Plaintiff raised these issues as a concerned citizen on behalf of the residents of the VILLAGE.

**ANSWER:**    Defendants deny.


16.    Defendants knowingly relied on these false claims against Plaintiff as a pretext for terminating him on December 8, 2005.  FRITZ and CASLER had the final authority to terminate Plaintiff on behalf of the VILLAGE.  As Director of Police and as VILLAGE manager, CASLER and FRITZ were delegated with the final decision authority and final policymaking authority to terminate Plaintiff and to make decisions that affected OPS.

**ANSWER:**    Defendants deny the factual allegations and legal conclusions contained in Paragraph 16.

17.    FRITZ and CASLER misused their positions with the VILLAGE to personally retaliate against Plaintiff and committed these actions under color of state law. Defendants knew that their actions violated the law and took these actions because they were embarrassed when Plaintiff expressed his concerns about the proposed changes for OPS to other individuals.

**ANSWER:**    Defendants deny.

18.    The Defendants' actions violated 42 U.S.C §1983 because they were taken in retaliation against Plaintiff's exercise of his rights under the First and Fourteenth Amendments and Defendants attempted to prevent him from exercising his rights under the First and Fourteenth Amendment through their retaliatory conduct. The Defendants' actions had a chilling effect on Plaintiff's speech and expression of ideas in violation of the First and Fourteenth Amendment.

**ANSWER:**    Defendants deny.

19.    As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 19.

20.    The acts, conduct, and behavior of the individual Defendants were performed knowingly, intentionally, and maliciously. Plaintiff is entitled to an award of punitive damages against the individual Defendants FRITZ and CASLER because they knew or should have known that their actions violated the law.

**ANSWER:**    Defendants deny.

21.    Plaintiff demands a jury trial.

**ANSWER:**    Defendants admit.

## COUNT II
## SECTION 1983 - DUE PROCESS

1-18.   Plaintiff realleges ¶¶1 through 14 of Count I as ¶¶1 through 18 of this Count II.

**ANSWER:**   Defendants re-state and re-allege their answers as if fully stated herein.

19.   The Defendant VILLAGE maintains a set of mandatory administrative rules and procedures that provide all employees, except probationary and seasonal employees, with the right to a formal investigation and administrative review procedure.   These mandatory rules include Corrective Action Procedures, Administrative Protocols, and Internal Investigations procedures for employees.   Defendant has applied these rules and procedures to all employees, including the Chief or Director Police and to the Police Administrative Manager when they were accused of alleged misconduct, and should have applied these rules to Plaintiff.

**ANSWER:**   Defendants deny.

20.   The Administrative Protocol requires that an investigation be conducted for any complaint made against an employee and that a formal written corrective action recommendation be prepared.   The Corrective Action Procedure requires that Defendants must adhere to progressive discipline except in the case of "major" violations such as fraud or use of illegal drugs and provides a grievance procedure.   The Internal Investigations procedures provide for a formal investigative process and Administrative Review.   This includes preparing a written Report of Inquiry documenting the investigation, issuing the employee with a Notification of Investigation and Rights Prior to Investigation Form and questioning the employee using an audio record.

**ANSWER:**   Defendants deny.

21.   Though Defendants have followed these mandatory procedures in other cases such as with the Chief or Director of Police and the Police Administrative Manager, Defendants failed to adhere to these procedures before or at the time they terminated Plaintiff.   When Plaintiff was asked to inform CASLER about what he had said to the Trustee and Chairman, Plaintiff was not told that there was any potential discipline being considered or that he was under any type of investigation, or follow any other of the mandatory procedures that limited the method, ability and circumstances under which Plaintiff could be disciplined or terminated. Further, Defendants violated its mandatory procedures for progressive discipline when it terminated Plaintiff though he had no prior discipline and was not being charged with a "major" offense.

8

**ANSWER:**    Defendants deny.


22.    The VILLAGE's mandatory procedures as alleged above applied to Plaintiff and gave Plaintiff a property interest in his position. The Defendants violated 42 U.S.C. 1983 by terminating Plaintiff and depriving him of his property interest without due process through their failure to adhere to these mandatory procedures and for terminating him without due process in retaliation for exercising his rights to free speech under the First and Fourteenth Amendments.

**ANSWER:**    Defendants deny.


23.    Defendants knowingly relied on these false claims against Plaintiff as a pretext for terminating him on December 8, 2005 without due process. FRITZ and CASLER has the final authority to terminate Plaintiff on behalf of the VILLAGE. As Director of police and as VILLAGE manager, CASLER and FRITZ were delegated with the final decision authority and final policymaking authority to terminate Plaintiff and to make decisions that affected OPS.

**ANSWER:**    Defendants deny.


24.    FRITZ and CASLER misused their positions with the VILLAGE in depriving him of his property rights without due process in order to personally retaliate against Plaintiff and they committed these actions under color of state law. Defendants knew that their actions violated the law and took these actions because they were embarrassed with Plaintiff expressed his concerns about the proposed changes to OPS to other individuals.

**ANSWER:**    Defendants deny.


25.    As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to

the truth of the averments in Paragraph 25.


26.    The acts, conduct, and behavior of the individual Defendants were performed knowingly, intentionally, and maliciously. Plaintiff is entitled to an award of punitive damages against the individual Defendants FRITZ and CASLER because they knew or should have known that their actions violated the law.

9

**ANSWER:**   Defendants deny.


27.   Plaintiff demands a jury trial.

**ANSWER:**   Defendants admit.


## COUNT III
## RETALIATORY DISCHARGE AGAINST THE VILLAGE

1-15.   Plaintiff realleges ¶¶1 through 14 of Count I as ¶¶1 through 14 of this Count III.

**ANSWER:**   Defendants re-state and re-allege their answers as if fully stated herein.


16.   The State of Illinois has an important public policy to insure that complaints against police officers are properly investigated in accordance with the Uniform Peace Offices' Disciplinary Act.  The State of Illinois also has an important public policy in insuring that only properly qualified applicants for a town or village police and fire department are hired and retained for these positions in accordance with state law.  The State of Illinois also has an important public policy in having villages and towns maintain a professional police department and Defendant VILLAGE tried to accomplish this by obtaining accreditation through the Commission on Accreditation for Law Enforcement.  This accreditation process requires a system such as OPS to conduct internal investigations as to alleged police misconduct.

**ANSWER:**   Defendants deny the legal conclusions contained in Paragraph 16.


17.   Defendant VILLAGE, through its duly authorized agents, FRITZ and CASLER, terminated Plaintiff in retaliation for expressing his concerns to the VILLAGE Trustee and Chairman of the Board of Police and Fire Commissioners that the proposed changes may interfere with and prevent OPS from meeting these public policy goals as described above. Defendant VILLAGE also violated Plaintiff's free speech rights by this retaliatory discharge as the State of Illinois has a policy of encouraging free speech about matters of public concern.

**ANSWER:**   Defendants deny.


18.   Defendant VILLAGE terminated Plaintiff based solely on malice and ill will against Plaintiff because Defendant VILLAGE was embarrassed by Plaintiff's complaints and some of the proposed changes for OPS were cancelled or delayed due to Plaintiff's complaints.

10

Defendant was also concerned that Plaintiff's complaints could jeopardize its accreditation which allows Defendant to obtain lower insurance premiums for liability insurance. Defendant willfully made false allegations against Plaintiff's integrity which it knew to be false when it terminated him in retaliation for his complaints of how Defendant's proposed plans could violate important public policy goals of the State of Illinois, and in violation of his rights to free speech about matters of public concern.

**ANSWER:**    Defendants deny.

19.    As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to

the truth of the averments in Paragraph 19.

20.    Plaintiff demands a jury trial.

**ANSWER:**    Defendants admit.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH THE PROSPECTIVE ECONOMIC**
**ADVANTAGE AS TO CASLER AND FRITZ**

1-16.    Plaintiff realleges ¶¶1 through 16 of Count III above, as ¶¶1 through 15 of this Count IV.

**ANSWER:**    Defendants re-state and re-allege their answers as if fully stated herein.

17.    When Plaintiff made his objections known to the VILLAGE Trustee and Chairman of the Board of Police and Fire Commissioners, the VILLAGE subsequently postponed the plans of FRITZ and CASLER to relocate OPS and increase the scope of OPS's duties. CASLER warned Plaintiff that his complaints and expressions of concerns made both FRITZ and CASLER "look bad" and this had now become a "political" issue.

**ANSWER:**    Defendants deny.

18.    FRITZ and CASLER caused Plaintiff's termination based solely on malice and ill will against because his complaints about their proposed changes made them "look bad" and embarrassed them. These Defendants acted outside the scope of their employment with the VILLAGE and acted completely against the best interests of the VILLAGE by falsely causing Plaintiff's termination based on an alleged lack of integrity which they knew to be false since they admitted that the real reason was because Plaintiff's complaints made them "look bad".

**ANSWER:**    Defendants deny.


19.    Defendant knew that the VILLAGE and State of Illinois had an express policy of recognizing the rights of free speech of its employees and the prohibition of taking any retaliatory action against Plaintiff for exercising his rights of free speech. Defendants intentionally violated and ignored that policy and acted in knowing violation of Federal civil rights law when they tortiously interfered with Plaintiff's free speech and retaliated against Plaintiff for expressing his reasonable concerns about Defendants' proposed changes.

**ANSWER:**    Defendants admit the first sentence of Paragraph 19, but deny all remaining allegations.


20.    As a direct result of Defendants' actions, Plaintiff has lost salary, employment benefits, and has suffered emotional distress.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments in Paragraph 20.


21.    Plaintiff demands a jury trial.

**ANSWER:**    Admit.


## AFFIRMATIVE DEFENSES

1.    The individual defendants are entitled to qualified immunity as to Plaintiff's claims brought pursuant to Section 1983, specifically Counts I and II.

2.      Count III, which is solely against Defendant Village of Schaumburg, is barred by the Local Government and Local Governmental Employees Tort Immunity Act.

3.      Count IV, which is only against Defendant Fritz and Defendant Casler, is barred by the Local Government and Local Governmental Employees Tort Immunity Act and public officials immunity.

4.      Plaintiff fails to state a claim upon which relief can be granted.

## JURY DEMAND

Defendants demand a trial by jury for all issues so triable.

s/ Iain D. Johnston

Iain Johnston
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, Illinois 60603
(312) 263-3600

# 5004760_v1

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GERALD M. McLAUGHLIN, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 07 C 6906 |
| | ) | **Judge Der-Yeghiayan** |
| RICHARD CASLER, individually and in | ) | |
| his official capacity, KENNETH | ) | |
| FRITZ, individually and in his official | ) | |
| capacity, and the VILLAGE OF | ) | |
| SCHAUMBURG, | ) | |
| | ) | |
| **Defendants.** | ) | |

### NOTICE OF FILING

To:   Arthur R. Ehrlich
      Goldman & Ehrlich
      19 South La Salle Street
      Suite 1500
      Chicago, IL  60603

PLEASE TAKE NOTICE that on February 14, 2008, we filed electronically with the Clerk of the United States District Court For the Northern District of Illinois Answer to Complaint and Affirmative Defenses.

Respectfully submitted,
Village of Schaumburg

By: s/ Iain D. Johnston

Jack M. Siegel
Iain D. Johnston
Holland & Knight LLP
131 S. Dearborn Street
30th Floor
Chicago, Illinois 60603
(312) 263-3600

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a true and correct copy of the foregoing Notice of Filing together with Answer to Complaint and Affirmative Defenses were served electronically on the following attorneys:

> Arthur R. Ehrlich
> Goldman & Ehrlich
> 19 South La Salle Street
> Suite 1500
> Chicago, IL  60603

on February 14, 2008.

s/ Iain D. Johnston

# 5124783_v1

**EXHIBIT 2**

LexisNexis® *Total Research System*

Custom ID ▾ Law School ID ┆ Switch Client ┆ Preferences ┆ Live Support ┆ Sign O

Search ▼ Research Tasks ▼ Get a Document ▼ *Shepard's®* ▼ Alerts ▼ Total Litigator ▼ Transactional Advisor ▼ Cour

Service: **Get by LEXSEE®**
Citation: **2005 u.s. dist. lexis 29475**

*2005 U.S. Dist. LEXIS 29475, ** *

KEVIN DOWNEY and JANICE TUXHORN, Plaintiffs, v. CHARLES SHONKWILER, et al., Defendants.

No. 05-3001

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

2005 U.S. Dist. LEXIS 29475

November 16, 2005, Decided
November 16, 2005, Filed

**SUBSEQUENT HISTORY:** Claim dismissed by, Count dismissed at Downey v. Ivemeyer, 2006 U.S. Dist. LEXIS 16599 (C.D. Ill., Feb. 28, 2006)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff terminated employees filed separate 42 U.S.C.S. § 1983 suits against defendants, a regional education office, a regional superintendent, a corrections official, and a special education district coordinator, after their contracts with the special education district were not renewed. The suits were consolidated for trial. The superintendent, the coordinator, and the regional office filed a Fed. R. Civ. P. 12(b)(6) dismissal motion.

**OVERVIEW:** The employees worked for the district, which was part of the regional office. They alleged that they were terminated on political grounds, in violation of their U.S. Const. amend. I rights. They also asserted breach of contract and tortious interference with employment relationship claims. The court found that the employees had sufficiently alleged the elements of their 42 U.S.C.S. § 1983 claims. They had identified the positions that they held, they had claimed that they were fired due to their political affiliations, and they had alleged that moving defendants were personally involved in the decision not to renew their contracts, all of which was sufficient to put moving defendants on notice of their U.S. Const. amend. I claims for Fed. R. Civ. P. 8(a) purposes. Moving defendants would not be entitled to qualified immunity if they wrongfully terminated the employees on political grounds. The employees failed to state actionable breach of contract claims; the regional office was given discretionary authority over renewal decisions. The superintendent and coordinator were immune under 745 Ill. Comp. Stat. 10/2-201 with regard to the employees' tortious interference claims.

**OUTCOME:** The court allowed the dismissal motion in part and denied it in part. It dismissed the employees' breach of contract claims and dismissed their tortious interference claims against the superintendent and the coordinator. The court denied the remainder of the dismissal motion.

**CORE TERMS:** employment contract, affiliations, immunity, punitive damages, renew, terminating, terminate, renewed, immune, ended, discretionary acts, stated term, notice, terminated, state law, individual capacities, summary judgment, public employee, employment decisions, entitled to attorneys' fees, qualified immunity, fail to state, participated, recommended, personally, renewable, convert, willful, fired, Memorandum of Law

### LEXISNEXIS® HEADNOTES                                                                 ⊟ Hide

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🔍

*HN1* ⚲ For purposes of a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court must accept as true all well-pleaded factual allegations contained in the amended complaints and draw all inferences in the light most favorable to the plaintiffs. The amended complaints should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🔍
Civil Procedure > Summary Judgment

*HN2* ⚲ A motion to dismiss is to be decided on the pleadings. When parties attempt to rely on matters outside the pleadings to support a motion to dismiss, the court has the discretion to treat the motion as a motion to dismiss or to convert the motion into a motion for summary judgment. Fed. R. Civ. P. 12(b)(6). Where a court, in its discretion, addresses a motion as a motion to dismiss and does not convert the motion into a motion for summary judgment, it will not consider affidavits submitted by the parties in support and in opposition to the motion.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims 🔍
Evidence > Judicial Notice > Adjudicative Facts > Public Records 🔍

*HN3* ⚲ A court can consider matters of public record, such as a recommended decision by an administrative law judge of the Illinois Labor Relations Board, when deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Political Speech 🔍
Governments > Local Governments > Employees & Officials 🔍
Governments > State & Territorial Governments > Employees & Officials 🔍
Labor & Employment Law > Employment Relationships > At-Will Employment > Public Employees 🔍
Labor & Employment Law > Wrongful Termination > Public Policy 🔍

*HN4* ⚲ State and municipal officials may not terminate the employment of a public employee because of the employee's political affiliations.  More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements 🔍
Labor & Employment Law > Wrongful Termination > Public Policy 🔍

*HN5* ⚲ Where the defendants know the specific employment decisions that are at issue in a wrongful termination suit, and they know that each of the plaintiff alleges that the defendants fired them because of their political affiliations, the pleadings give sufficient notice of the claims. Fed. R. Civ. P. 8(a).  More Like This Headnote

Administrative Law > Agency Adjudication > Decisions > Res Judicata 🔍
Civil Procedure > Judgments > Preclusion & Effect of Judgments > Res Judicata 🔍

*HN6* ⚲ Where there is no showing that the plaintiffs in a suit participated in proceedings

before an administrative law judge (ALJ) of the Illinois Labor Relations Board, the ALJ's recommended findings are not binding on the plaintiffs or the court hearing their suit.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Political Speech 📎
Civil Rights Law > Immunity From Liability > Defenses 📎
Governments > Local Governments > Employees & Officials 📎
Governments > State & Territorial Governments > Employees & Officials 📎
Labor & Employment Law > Employment Relationships > At-Will Employment > Public Employees 📎

HN7 ⚓ Established United States Supreme Court precedent holds that terminating the employment of a public employee because of his political affiliations violates the employee's First Amendment rights. There will be no qualified immunity defense in a 42 U.S.C.S. § 1983 if the plaintiffs can prove that individual defendants fired them because of their political affiliations.  More Like This Headnote

Civil Procedure > Remedies > Damages > Punitive Damages 📎
Civil Rights Law > Section 1983 Actions > General Overview 📎
Civil Rights Law > Immunity From Liability > State Consent & Waiver of Immunity 📎

HN8 ⚓ Individual defendants can be liable for punitive damages in their individual capacities under 42 U.S.C.S. §1983. Illinois law does not provide immunity for § 1983 actions.  More Like This Headnote

Civil Procedure > Remedies > Costs & Attorney Fees > Attorney Expenses & Fees > Statutory Awards 📎
Civil Rights Law > Section 1983 Actions > General Overview 📎

HN9 ⚓ Plaintiffs are entitled to attorneys' fees if they prevail on their 42 U.S.C.S. § 1983 claim. 28 U.S.C.S. § 1988.  More Like This Headnote

Contracts Law > Contract Interpretation > General Overview 📎

HN10 ⚓ The interpretation of a contract is a matter of law in Illinois. When interpreting a contract, all documents that are part of the agreement should be construed together, and the court must give meaning to all of the stated terms. Absent an ambiguity, the court must give effect to the plain meaning of all of the terms of the agreement.  More Like This Headnote

Governments > Local Governments > Employees & Officials 📎
Governments > State & Territorial Governments > Employees & Officials 📎
Torts > Public Entity Liability > Immunity > General Overview 📎

HN11 ⚓ Section 2-201 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-201, provides absolute immunity for governmental employees for discretionary acts, even if those acts are willful. The decision whether to terminate someone's employment is a discretionary act.  More Like This Headnote

Governments > Local Governments > Employees & Officials 📎
Governments > State & Territorial Governments > Employees & Officials 📎
Torts > Public Entity Liability > Immunity > General Overview 📎
Torts > Public Entity Liability > Liability > General Overview 📎

HN12 ⚓ 745 Ill. Comp. Stat. 10/2-201 does not provide immunity for conduct that is not a discretionary act. Deciding whether to terminate someone's employment, however, is a discretionary act. Section 2-201 provides immunity even when the defendants' exercise of their discretion is willful.  More Like This Headnote

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 29475    Page 26 of 43    Page 4 of 9

Case 1:07-cv-06908    Document 18    Filed 02/20/2008

**COUNSEL: [*1]** For Kevin Downey, Janice Tuxhorn, Plaintiffs: John Edward Kerley, KERLEY & ASSOCIATES PC, Springfield, IL.

For Charles Shonkwiler, Pam Jurkoshek, Macon-Piatt Regional Office of Education, Defendants: Dennis Leslie Weedman, ROBBINS SCHWARTZ NICHOLAS, Decatur, IL.

For Roberta Fews, Defendant: Ericka Sanders, ILLINOIS ATTORNEY GENERAL, Springfield, IL.

**JUDGES:** JEANNE E. SCOTT, U.S. District Judge.

**OPINION BY:** JEANNE E. SCOTT

**OPINION**

**OPINION**

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendants Charles Shonkwiler, Pam Jurkoshek and Macon-Piatt Regional Office of Education's Motion to Dismiss Plaintiffs' First Amended Complaints and Memorandum of Law in Support Thereof (d/e 22) (Motion to Dismiss). Plaintiffs Kevin Downey and Janice Tuxhorn's actions have been consolidated, and each Plaintiff has filed a First Amended Complaint. Plaintiff Downey's First Amended Complaint (d/e 17) (Downey Amended Complaint); Plaintiff Tuxhorn's First Amended Complaint (d/e 19) (Tuxhorn Amended Complaint) (collectively, the Amended Complaints). The Defendants ask the Court to dismiss both Amended Complaints. For the reasons set forth below, the Motion to Dismiss **[*2]** is allowed in part.

*HN1* For purposes of the Motion to Dismiss, the Court must accept as true all well-pleaded factual allegations contained in the Amended Complaints and draw all inferences in the light most favorable to Downey and Tuxhorn. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). The Amended Complaints should not be dismissed unless it appears beyond doubt that Downey and Tuxhorn can prove no set of facts that would entitle them to relief. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996).

Defendants Shonkwiler, Jurkoshek, and Macon-Piatt Regional Office of Education (Regional Office) submitted an Affidavit of Pam Jurkoshek. In response, Downey submitted the Affidavit of an individual named Robert Eifert. *HN2* A motion to dismiss is to be decided on the pleadings. When parties attempt to rely on matters outside the pleadings to support a motion to dismiss, the Court has the discretion to treat the motion as a motion to dismiss or to convert the motion into a motion for summary judgment. Fed. R. Civ. P. 12(b)(6); Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998). **[*3]** In this case, the Court, in its discretion, will address the Motion as a motion to dismiss and will not convert the Motion into a motion for summary judgment. The Court, therefore, will not consider the Affidavits submitted by the parties.

The Defendants have also submitted a recommended decision by the Administrative Law Judge of the Illinois Labor Relations Board. Motion to Dismiss, Exhibit 1, State of Illinois, Dept. Of Central Management Services and AFSCME, Council 31 (ILRB ALJ, Case No. S-RC-05-126, July 27, 2005) (ALJ Recommendation). *HN3* The Court can consider matters of public record, such as the ALJ Recommendation, when deciding a motion to dismiss.

Menominee Indian Tribe of Wisconsin v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998).

According to the Amended Complaints, Downey and Tuxhorn worked for the Macon Corrections Special Education District (MCSED), which was part of the Regional Office. Downey worked as a resource specialist-GED tester. Tuxhorn worked as a clerical technician. The MCSED provided services at facilities operated by the Illinois Department of Corrections (Department). Defendant Charles Shonkwiler was the Regional Superintendent of Schools **[*4]** for the Regional Office. Defendant Pam Jurkoshek was the coordinator of the MCSED. Defendant Fews was a Deputy Director of the Department. [1]

**FOOTNOTES**

[1] The Court refers to these three Defendants collectively as the Individual Defendants.

Downey and Tuxhorn signed substantially identical Employment Contracts with the Regional Office. Both signed in June 2003. Downey Amended Complaint, Exhibit A; Tuxhorn Amended Complaint, Exhibit A. [2] The Employment Contracts were between Downey and Tuxhorn, respectively, and the Regional Office and Shonkwiler in his official position as Superintendent of the Regional Office. Downey's Employment Contract stated that the original contract term began on June 16, 2003, and ended on June 30, 2004. [3] Tuxhorn's Employment Contract stated that the original contract term began on July 1, 2003, and ended on June 30, 2004. The Employment Contracts both stated that, "Employee shall observe and abide by all the rules and regulations of the work sites and conform to the personnel policies **[*5]** and procedures established by the employer. The *MCSED Employee Handbook* is attached." Id. (Italics in the original). The Employment Contracts further provided:

> Either party may at his/her option, and without cause, terminate this agreement by giving the other party thirty (30) days prior written notice. Employee understands and agrees that on termination by employer, whether at the conclusion of this employment contract period or sooner, employee shall have no claim or right to continue employment on the basis of length of service with employer or any predecessor of employer. . . . This contract contains the entire agreement of the parties as to the duration of employment and shall be renewable at the discretion of the employer.

Id. The Employee Handbook stated:

> Employment may be renewed each July through June contract year, provided Department of Corrections funding is continued, work performance is satisfactory, and employee possesses appropriate certification, if applicable.

Amended Complaints, Exhibit B, MCSED Employee Handbook, dated July 1, 2003, p. 1.

**FOOTNOTES**

[2] The Employment Contracts are actually attached to the original Complaints. The Court treats them as attached to the Amended Complaints. The Defendants have not objected to the fact that the Plaintiffs did not re-file the documents with the Amended Complaints. **[*6]**

[3] Downey's Employment Contract contains a typographical error that erroneously states that his term of employment ended on June 30, 2003, instead of June 30, 2004. Downey Amended Complaint, Exhibit A. The parties do not dispute that Downey's stated term of

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 29473    Page 6 of 9

Case 1:07-cv-06906    Document 16    Filed 02/20/2008    Page 28 of 43

employment actually ended on June 30, 2004.

On or about May 26, 2004, the Defendants terminated Downey's employment on a political basis. Downey Amended Complaint, P 8. On or about June 30,2004, the Defendants terminated Tuxhorn's employment on a political basis. Tuxhorn Amended Complaint, P 8. The Defendants terminated the employment of both of the Plaintiffs by not renewing the Employment Contracts. Downey Amended Complaint, P 24; Tuxhorn Amended Complaint, P 24. Downey and Tuxhorn further allege that there was nothing in either of their positions that made political considerations a requisite for the position.

Downey and Tuxhorn each assert three counts based on these facts. Count I in each Amended Complaint is a § 1983 action claiming that the Defendants violated Plaintiffs' First Amendment rights by terminating each [*7] Plaintiff's public employment because of each Plaintiff's political affiliations. The Plaintiffs seek compensatory and punitive damages against the Individual Defendants, in their individual capacities, and an injunction ordering the Defendants to return the Plaintiffs to their positions at MCSED. Count II of each Amended Complaint asserts a claim for breach of contract against the Regional Office and Shonkwiler. Count III asserts a claim against the Individual Defendants for tortious interference with each Plaintiff's employment relationship with the Regional Office. Defendants Shonkwiler, Jurkoshek, and the Regional Office (the Moving Defendants) move to dismiss the Amended Complaints.

ANALYSIS

A. COUNT I

Count I of each Amended Complaint asserts a § 1983 action against the Defendants for violating the Plaintiffs' First Amendment rights by terminating their employment for political considerations. [HN4]State and municipal officials may not terminate the employment of a public employee because of the employee's political affiliations. Elrod v. Burns, 427 U.S. 347, 372-73, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). The Plaintiffs have sufficiently alleged the elements of their First Amendment [*8] claims. [4]

**FOOTNOTES**

[4] The Defendants are entitled to assert affirmative defenses, including the defense that the position held by the employee is one for which political affiliations is an appropriate requirement for the job. Branti v. Finkel, 445 U.S. 507, 517-18, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980).

The Moving Defendants argue that the Amended Complaints give insufficient notice of the claims, but the Court disagrees. [HN5]The Moving Defendants know the specific employment decisions that are at issue, and they know that each Plaintiff alleges that the Defendants fired them because of their political affiliations. The pleading gives sufficient notice of the claims. Fed. R. Civ. P. 8(a).

Shonkwiler and Jurkoshek argue that they did not have sufficient personal involvement to be liable under § 1983. The Plaintiffs allege that these Defendants were personally involved. Amended Complaints, P 8. The Court must believe the allegations in the Amended Complaints for purposes of the Motion. Shonkwiler and Jurkoshek also cite the ALJ [*9] Recommendation to prove that they had no control over the employment decision here. [HN6]There is no showing that the Plaintiffs participated in the proceedings before the ALJ. Thus,

his recommended findings are not binding on the Plaintiffs or this Court. The Court must assume the allegations in the Amended Complaints are true and that these two Defendants personally participated in the decision to discriminate against the Plaintiffs because of their political affiliations.

The Moving Defendants argue that they are entitled to qualified immunity. The Court disagrees. *HN7*Established Supreme Court precedent holds that terminating the employment of a public employee because of his political affiliations violates the employee's First Amendment rights. Elrod, 427 U.S. at 372-73. Thus, there would be no qualified immunity defense if Downey and Tuxhorn can prove that the Individual Defendants fired them because of their political affiliations.

The Defendants also argue that Downey and Tuxhorn cannot secure punitive damages. The*HN8* Individual Defendants can be liable for punitive damages in their individual capacities under §1983. Kentucky v. Graham, 473 U.S. 159, 167 n. 13, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). [*10] Shonkwiler and Jurkoshek argue that they are immune from punitive damages under state law. State law does not provide immunity for § 1983 actions. Howlett By and Through Howlett v. Rose, 496 U.S. 356, 376-77, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990). The Plaintiffs can seek punitive damages against the Individual Defendants.

The Moving Defendants also question whether the Plaintiffs are entitled to attorneys' fees. *HN9*The Plaintiffs are entitled to attorneys' fees if they prevail on their § 1983 claim. 42 U.S.C. § 1983.

B. COUNT II

The Plaintiffs, however, fail to state a claim for breach of their respective employment contracts. *HN10*The interpretation of a contract is a matter of law in Illinois. GNB Battery Technologies, Inc. v. Gould, Inc., 65 F.3d 615, 621 (7th Cir. 1995). When interpreting a contract, all documents that are part of the agreement should be construed together, and the Court must give meaning to all of the stated terms. Id. at 622. Absent an ambiguity, the Court must give effect to the plain meaning of all of the terms of the agreement. Atlantic Mut. Ins. Co. v. Metron Engineering and Const. Co., 83 F.3d 897, 898 (7th Cir. 1996). [*11] Plaintiffs allege that the Defendants did not renew the contract at the end of the stated term, June 30, 2004. The provisions of the Employment Contract, quoted above, clearly state that the Employment Contract, "shall be renewable at the discretion of the employer." Thus, the Regional Office retained the discretion not to renew these contracts. The Regional Office exercised that discretion and did not renew these agreements. There was no breach.

The Plaintiffs rely on the language quoted from the Employee Handbook that their employment "may be renewed" if three conditions are met. This language does not require renewal of employment. If renewal was required, the language would have said that employment "shall" be renewed if three conditions were met; the Handbook does not say this. The Regional Office expressly retained the discretion to decide whether to renew these agreements. The Regional Office exercised that discretion and elected not to renew them. There was no breach. Count II fails to state a claim.

C. COUNT III

The Plaintiffs allege a state law tort claim in Count III that the Individual Defendants interfered with the Plaintiffs' reasonable expectation of continued [*12] employment with the Regional Office/MCSED by preventing their respective employment contracts from being renewed. Amended Complaints, P35. Defendants Shonkwiler and Jurkoshek argue that they are immune from this state law claim under the Illinois Local Governmental and

Governmental Employees Tort Immunity Act (Tort Immunity Act). 745 ILCS 10/2-201. *HN11*
↑Section 2-201 of the Tort Immunity Act provides absolute immunity for governmental
employees for discretionary acts even if those acts are willful. In re Chicago Flood Litig., 176
Ill. 2d 179, 195, 680 N.E.2d 265, 273, 223 Ill. Dec. 532 (1997). The decision whether to
terminate someone's employment is A discretionary act. Johnson v. Mers, 279 Ill.App.3d 372,
380, 664 N.E.2d 668, 675, 216 Ill. Dec. 31 (1996). Thus, Defendants Shonkwiler and
Jurkoshek are immune from liability for terminating the Plaintiffs' employment.

The Plaintiffs cite the case of Valentino v. Hilquist for the proposition that § 2-201 does not
apply to intentional torts. Valentino, 337 Ill.App.3d 461, 472-73, 785 N.E.2d 891, 901, 271
Ill. Dec. 697 (2003). The allegations in Valentino involved intentional physical **[*13]** and
verbal abuse. *HN12*↑Section 2-201 does not provide immunity for that because such conduct
is not a discretionary act. Deciding whether to terminate someone's employment, however, is
a discretionary act. Section 2-201 provides immunity even when the Defendants' exercise of
their discretion was willful. In re Chicago Flood Litig., 176 Ill. 2d at 195, 680 N.E.2d at 273.
Defendants Shonkwiler and Jurkoshek are immune from the claim in Count III.

THEREFORE, Defendants Charles Shonkwiler, Pam Jurkoshek and Macon-Piatt Regional Office
of Education's Motion to Dismiss Plaintiffs' First Amended Complaints and Memorandum of
Law in Support Thereof (d/e 22) is ALLOWED, in part, and DENIED, in part. Count II in each
of the Amended Complaints is dismissed. The claims against Defendants Shonkwiler and
Jurkoshek in Count III of each of the Amended Complaints are dismissed. The remainder of
the Motion is denied.

IT IS THEREFORE SO ORDERED.

ENTER: November 16, 2005.

FOR THE COURT:

s/ Jeanne E. Scott

JEANNE E. SCOTT

UNITED STATES DISTRICT JUDGE

Service: **Get by LEXSEE®**
Citation: **2005 u.s. dist. lexis 29475**
View: Full
Date/Time: Tuesday, February 19, 2008 - 7:11 PM EST

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor |
Counsel Selector

https://www.lexis.com/research/retrieve?_m=51b059caf05d05ff20db2c110be27c70&csvc...   2/19/2008

History | Delivery Manager | Switch Client | Preferences | Sign Off | Help



About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**EXHIBIT 3**

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15980    Page 33 of 43    Page 1 of 4

Case 1:07-cv-06906    Document 18    Filed 02/20/2008

LexisNexis® *Total Research System*    Custom ID ▾  Law School ID ┊ Switch Client ┊ Preferences ┊ Live Support ┊ Sign O

Search ▼ Research Tasks ▼ Get a Document ▼ Shepard's® ▼ Alerts ▼ Total Litigator ▼ Transactional Advisor ▼ Cour

Service: **Get by LEXSEE®**
Citation: **1997 u.s. dist. lexis 15980**

*1997 U.S. Dist. LEXIS 15980*, *

DAVID M. ANDERSON JR., MARK PLUSKOWSKI, ROBERTA M. TISO, ROBERT FOSTER, and CHARLES C. PAYNE, Plaintiffs, v. GRAYSLAKE SCHOOL DISTRICT NO. 46, DONNA DUFFY as Executor of the Estate of DAVID DUFFY and ORVIN CLARK, Defendants.

Case No. 94 C 5133

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1997 U.S. Dist. LEXIS 15980

October 3, 1997, Decided
October 3, 1997, Docketed

**DISPOSITION:** **[*1]** District's motion for reconsideration granted. Summary judgment granted in District's favor on Anderson's claim for retaliatory discharge (Count I).

**CASE SUMMARY**

**PROCEDURAL POSTURE:** The case was before the court on the motion of defendant school district to reconsider the portion of the court's order denying summary judgment on plaintiff former employee's state law claim for retaliatory discharge.

**OVERVIEW:** The district claimed that it was immune from suit under the Local Government and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-109. The court denied summary judgment, holding that the district's immunity was not absolute, as it did not extend to the district if its official's acts were willful and wanton or based on corrupt motives. In its motion for reconsideration, the district pointed out that an Illinois Supreme Court decision held that the legislature intended to immunize liability for both negligent and willful misconduct. The court ruled that the district was entitled to rehearing because the supreme court case was controlling. The employee claimed that the district fired him because he publicly disclosed improper asbestos removals in the schools. In actuality, the district's school board made the decision to fire the employee. Pursuant to 745 Ill. Comp. Stat. 10/2-201, the board members' discretionary act of firing the employee was absolutely immune regardless of whether they acted willfully or wantonly. Because the Act immunized the board members, the district was also immune under 745 Ill. Comp. Stat. 10/2-109 and was entitled to summary judgment.

**OUTCOME:** The court granted the district's motion for reconsideration and granted summary judgment in the district's favor on the retaliatory discharge claim.

**CORE TERMS:** summary judgment, reconsideration, school board, retaliatory discharge, immunity, immune, discretionary acts, school district, public entity, immunize, willful, wanton, firing, reconsider

**LEXISNEXIS® HEADNOTES**                                                            ⊟ **Hide**

Civil Procedure > Judgments > Relief From Judgment > Motions to Alter & Amend 🔖
HN1⚓ A motion for reconsideration is properly granted if a significant change in
controlling law occurs after an issue is submitted to the
court. More Like This Headnote

Governments > Local Governments > Claims By & Against 🔖
HN2⚓ See 745 Ill. Comp. Stat. 10/2-109.

Governments > Local Governments > Claims By & Against 🔖
Governments > Local Governments > Employees & Officials 🔖
Labor & Employment Law > Employment Relationships > At-Will Employment > Employees 🔖
HN3⚓ A "school district" is considered a "local public entity" under the Local Government
and Governmental Employees Tort Immunity Act. 745 Ill. Comp. Stat. 10/1-206.
The Act's definition of "employee" includes member[s] of a board whether or not
compensated. 745 Ill. Comp. Stat. 10/1-202. More Like This Headnote

Governments > Local Governments > Claims By & Against 🔖
HN4⚓ Under 745 Ill. Comp. Stat. 10/2-201, a public "employee" is not liable for
discretionary such as hiring and firing decisions. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Education Law > Immunities > Official & Qualified Immunity 🔖
Education Law > Immunities > Statutory Immunity 🔖
HN5⚓ School board members' discretionary act of firing an employee is absolutely
immune regardless of whether the board members acted willfully or wantonly. 745
Ill. Comp. Stat. 10/2-201. More Like This Headnote | *Shepardize: Restrict By Headnote*

**COUNSEL:** For DAVID M ANDERSON, JR, MARK PLUSKOWSKI, ROBERTA M TISO, ROBERT
FOSTER, CHARLES C PAYNE, plaintiffs: Roy P. Olson, Mark T. Solmor, Friedman and Olson,
Ltd., Chicago, IL.

For DAVID M ANDERSON, JR, MARK PLUSKOWSKI, ROBERTA M TISO, ROBERT FOSTER,
CHARLES C PAYNE, plaintiffs: Blake Wolfe Horwitz, Law Offices of Blake Horwitz, Chicago, IL.

For GRAYSLAKE SCHOOL DISTRICT 46, ANGELINA K MUSKIN, ORVIN CLARK, DONNA N
DUFFY, defendants: Karen J. Dimond, Heidi Ann Katz, Robbins, Schwartz, Nicholas, Lifton &
Taylor, Ltd., Chicago, IL.

**JUDGES:** Wayne R. Andersen, United States District Judge.

**OPINION BY:** Wayne R. Andersen

**OPINION**

*MEMORANDUM ORDER AND OPINION*

This matter is before the Court on the motion of defendant, Grayslake School District 46 (the
"District"), to reconsider the portion of the Court's Memorandum Order and Opinion denying
summary judgment on Count I as to plaintiff David Anderson ("Anderson"). For the following

reasons, the motion for reconsideration is granted.

On August 14, 1997, we granted summary judgment for the District **[*2]** on Counts I and II as to plaintiffs Mark Pluskowski, Roberta M. Tiso, Robert Foster and Charles C. Payne. At the same time, we denied summary judgment on Counts I and II against plaintiff David Anderson ("Anderson"). The District now moves the Court reconsider its decision denying summary judgment on Count I as to Anderson.

*HN1*⚓A motion for reconsideration is properly granted if a significant change in controlling law occurs after an issue is submitted to the court. _Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)._

In its motion for summary judgment on Anderson's claim for state law retaliatory discharge (Count I), the District claimed it was immune from suit under the _Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-109_ (the "Act"). We denied summary judgment holding that "The District's immunity. . . is not absolute. Immunity does not extend to the District if its official's acts are willful and wanton or based on corrupt motives." _Anderson v. Grayslake_, 94 CV 5133, 1997 WL 473900, *3 (N.D. Ill. 1997).

In its motion for reconsideration, the District points out that neither the parties nor the Court cited **[*3]** to the Illinois Supreme Court decision which held that "the legislature. . . intended to immunize liability for both negligence and willful and wanton misconduct." _In Re Chicago Flood Litigation, 176 Ill.2d 179, 196, 680 N.E.2d 265, 273, 223 Ill. Dec. 532 (1997)._ This case is controlling. Therefore, summary judgment must now be granted on Anderson's claim for retaliatory discharge (Count I).

Section 10/2-109 of the Act provides that *HN2*⚓"[a] local public entity is not liable for any injury resulting from the act or omission of its employee where the employee is not liable." *HN3*⚓A "school district" is considered a "local public entity" under the Act. 745 ILCS 10/1-206. The Act's definition of "employee" includes "member[s] of a board. . .whether or not compensated. . . ." 745 ILCS 10/1-202.

*HN4*⚓Under 745 ILCS 10/2-201, a public "employee" is not liable for discretionary acts such as hiring and firing decisions. See _Johnson v. Mers, 279 Ill. App. 3d 372, 379, 664 N.E.2d 668, 675, 216 Ill. Dec. 31 (1996)._ Anderson claims that the District fired him because he publicly disclosed improper asbestos removals in the District's schools. In actuality, the District's school board made the decision **[*4]** to fire Anderson. *HN5*⚓The school board members' discretionary act of firing Anderson is absolutely immune regardless of whether the board members acted willfully or wantonly. _In Re Chicago Flood Litigation, 176 Ill.2d at 196, 680 N.E.2d at 273; 745 ILCS 10/2-201._ Accordingly, because the Act immunizes the school board members, the District is also immune. 745 ILCS 10/2-109.

The District's motion for reconsideration is granted. Summary judgment is granted in the District's favor on Anderson's claim for retaliatory discharge (Count I). Plaintiff David Anderson's claim under 42 U.S.C. § 1983 (Count II) remains for trial.

It is so ordered.

Wayne R. Andersen

United States District Judge

Dated: October 3, 1997

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 15980    Page 36 of 43 Page 4 of 4

Case 1:07-cv-06690    Document 116    Filed 02/20/2008

Service: **Get by LEXSEE®**
Citation: **1997 u.s. dist. lexis 15980**
View: Full
Date/Time: Tuesday, February 19, 2008 - 7:12 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor |
Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Off | Help

 LexisNexis®

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

`

**EXHIBIT 4**

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 19097     Page 38 of 43    Page 1 of 6

Case 1:07-cv-06909 Document 33 Filed 02/20/2008

**LexisNexis**® *Total Research System*     Custom ID ▼ Law School ID ⦙ Switch Client ⦙ Preferences ⦙ Live Support ⦙ Sign O

Search ⦙ Research Tasks ⦙ Get a Document ⦙ Shepard's® ⦙ Alerts ⦙ Total Litigator ⦙ Transactional Advisor ⦙ Cour

Service: **Get by LEXSEE®**
Citation: **2007 u.s. dist. lexis 19097**

*2007 U.S. Dist. LEXIS 19097, \**

RODOLFO SANCHEZ, as Parent and Next Friend of JOEL SANCHEZ, a minor, NOEMI SANCHEZ, a minor, and DAVID SANCHEZ, a minor, Plaintiffs, v. The TOWN OF CICERO, a Municipal Corporation, And Town of Cicero Police Officers JERALD RODISH, PAUL BREDEMEIER, DEREK EVITT, WALTER COLLINS, and RHONDA ANN GROSS, Defendants.

No. 05 C 6506

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2007 U.S. Dist. LEXIS 19097

March 15, 2007, Decided
March 15, 2007, Filed

**CORE TERMS:** emotional distress, infliction, retention, detention, police officers, negligent hiring, punitive damages, excessive force, municipality, custom, police car, outrageous, municipal, severe, police station, approached, handcuffed, state law, discretionary act, detaining, arresting, arrest, asthma, cold, negligent act, minor children, police department, reasonable care, public entity, well-settled

**COUNSEL:** **[\*1]** For Rodolfo Sanchez, as Parent and next friend of, next of friend Joel Sanchez, next of friend Noemi Sanchez, next of friend David Sanchez, Plaintiff: James Rowe ▾✓, LEAD ATTORNEY, Law Firm of Rowe & Associates, Chicago, IL; Hall Adams, III ▾✓, Law Offices of Hall Adams, Chicago, IL.

For The Town of Cicero, a Municipal Corporation and Town of Cicero Police Officers, Defendant: George Santo Spataro ▾, Holly L. Tomchey, K. Austin Zimmer, Giglio & Del Galdo LLP, Westchester, IL.

For Jerald Rodish, Paul Bredemeier, Derek Evitt, Walter Collins and Rhonda Ann Gross, Defendants: Kevin William Horan ▾, LEAD ATTORNEY, James Bryan Novy, Rock Fusco LLC, Chicago, IL.

**JUDGES:** Wayne R. Andersen, United States District Judge.

**OPINION BY:** Wayne R. Andersen

**OPINION**

**MEMORANDUM, OPINION AND ORDER**

Rodolfo Sanchez, on behalf of himself and minor children Joel, Noemi, and David, filed this lawsuit against the Town of Cicero and Cicero police officers Jerald Rodish, Paul Bredemeier,

Derek Evitt, Walter Collins, and Rhonda Ann Gross for alleged civil rights violations under 42 U.S.C. § 1983 and state law violations including negligent and intentional infliction of emotional distress, and **[*2]** negligent hiring and retention. Defendants Town of Cicero, Rodish, Bredemeier, Evitt, Collins, and Gross filed motions to dismiss all counts of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, we grant the defendants' motion to dismiss Count I, with respect to the Town of Cicero only. We grant the defendants' motion to dismiss Count IV, the negligent hiring and retention claim against the Town of Cicero. The Town of Cicero's motion to dismiss the punitive damages allegations against it in all counts is granted. Moreover, we grant defendants Collins' and Gross' motions to dismiss all counts against them. Finally, we deny defendants' motion to dismiss Counts II and III.

## BACKGROUND

Plaintiffs assert that on the afternoon of October 7, 2005, Joel Sanchez was in front of his home in Cicero, Illinois accompanied by Benjamin Rivera. At approximately 2:20 p.m., Cicero Police Officers approached in a vehicle at which time Rivera ran away from the home. Police officers Jerald Rodish and Paul Bredemeier approached Joel who remained at the front of the home. Plaintiffs claim Rodish grabbed Joel by the **[*3]** neck, threw him hard up against the police car, placed Joel in handcuffs and threw him inside a police car. Shortly thereafter Noemi Sanchez, returning from school, approached the home and the officers. She was questioned as to the whereabouts of Rivera. Plaintiffs assert that upon stating she had no knowledge of Rivera's current location, Rodish handcuffed Noemi, told her she was under arrest, and placed her in the rear seat of the police car. David Sanchez then arrived home. After seeing the police and his siblings in police cars, David attempted to use his cellular phone to call his father, Rodolfo Sanchez. Plaintiff's allege Rodish and Bredemeier immediately approached David, asked him to identify himself, then confiscated his cell phone, handcuffed him, and placed David in the rear seat of the police car.

Joel, Noemi, and David were transported to the Cicero Police Station where they were placed on a bench and remained handcuffed. Plaintiffs claim that Rodish and Bredemeier made racist comments to the minors while questioning them. Plaintiffs allege that Joel, unable to answer a question posed by Bredemeier, was slapped across the face by Bredemeier, leaving a temporary red mark **[*4]** on Joel's face.

Plaintiffs also assert that when Joel informed Rodish and Bredemeier that he suffered from asthma and was having difficulty breathing, the officers responded with laughter. Rodish and Bredemeier allegedly later removed Joel's jacket and sweater and placed him in a cold holding room with his brother David. Plaintiffs allege Joel's asthma was greatly affected by the cold room, and David was ignored, when calling for help for his brother. Plaintiffs claim Joel's asthma was worsened as a result of the cold conditions of the holding room and the stress of the detention.

Noemi was allegedly held in a separate room where Rodish, Bredemeier, and Derek Evitt subjected her to sexually explicit questions and comments. Noemi asked to call her father, but the officers refused. David also asked to contact their father, but the officers again refused.

According to the complaint, the officers allowed David to contact the minors' father Rodolfo after three hours of detention. At approximately 7:00 p.m., Rodolfo arrived at the Cicero Police Station where Rodish and Bredenmeier allegedly refused to provide him with any information regarding his children. At approximately 8:00 p.m. **[*5]** , Rodolfo became extremely nervous and suffered a stroke. Paramedics removed Rodolfo from the police station and transported him to the hospital. Plaintiffs allege Rodish and Bredemeier told the minors still in custody that their father had suffered a heart attack and died, attributing his

death to the children's actions.

After approximately nine hours in custody, Joel, Noemi, and David were released to their older sibling, Elizabeth Gonzalez. At that time, the minors were notified by Gonzalez that their father had in fact not died.

According to the complaint, defendants violated federal civil rights laws and several state laws during the arrest and detention of minor plaintiffs on October 7, 2005. Count I of plaintiff's complaint alleges excessive force under 42 U.S.C. § 1983 in the detention and arrest of Joel, Noemi, and David Sanchez in violation of the Fourth Amendment's protection against unreasonable seizures. Count II asserts defendants violated Illinois state law in a failure to exercise reasonable care in detaining and arresting the minor plaintiffs causing negligent infliction of emotional distress to all plaintiffs. Count III claims defendants intended **[*6]** to cause severe emotional distress to all plaintiffs through their conduct on October 7, 2005. Finally, Count IV asserts the Town of Cicero negligently hired and retained Jerald Rodish and knowingly allowed Rodish to pose a danger to plaintiffs. Defendants filed a motion to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

## DISCUSSION

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all facts alleged in the complaint as true and draw reasonable inferences in favor of plaintiff. _Scott v. City of Chicago,_ 195 F.3d 950, 951 (7th Cir. 1999). A complaint need only contain enough facts so as to put the defendant on notice of the claim. _Flannery v. Recording Industry Association of America,_ 354 F.3d 632, 639 (7th Cir. 2004). Therefore, plaintiff's complaint will only be dismissed if it is clear that the plaintiff cannot prove a set of facts to support his allegations which would entitle him to relief. _Conley v. Gibson,_ 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); _Phelan v. City of Chicago,_ 347 F.3d 679, 681 (7th Cir. 2003). **[*7]**

### I. Count I - Excessive Force under 42 U.S.C. § 1983

In order to successfully plead a cause of action against a municipality under 42 U.S.C. § 1983, the plaintiff must allege unconstitutional conduct by a municipal employee that was perpetrated according to a municipal "policy" or "custom" and which directly caused plaintiff's injury. _Monell v. Department of Social Services,_ 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); _Sims v. Mulcahy,_ 902 F.2d 524, 542 (7th Cir. 1990). A municipality's policy can violate an individual's civil rights in three ways: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) an individual with final policymaking authority within the municipality caused the constitutional injury. _McTigue v. City of Chicago,_ 60 F.3d 381, 382 (7th Cir. 1995).

The Town of Cicero asserts in its motion to dismiss that plaintiffs have failed to allege that a policy, practice, or custom **[*8]** of the Town of Cicero was the cause plaintiffs' alleged injury. We agree. The plaintiffs' first amended complaint fails to meet the pleading requirements for a section 1983 claim against a municipality. Plaintiffs have failed to allege that the unconstitutional conduct of the municipal police officers was perpetrated according to any policy or custom of the Town of Cicero. There are no allegations as to an express policy of the Town of Cicero endorsing excessive force by the police. There are also no allegations that use of excessive force is a widespread practice within the Town of Cicero police department amounting to a well-settled custom. Finally, plaintiffs have not alleged their constitutional deprivations were a result of the conduct of an individual with final policymaking authority in the Town of Cicero.

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 91907   Page 4 of 6

Case 1:07-cv-06906   Document 18   Filed 02/20/2008   Page 41 of 43

Consequently, the defendants' motion to dismiss Count I of plaintiff's first amended complaint is granted as to the Town of Cicero only. However, plaintiffs are granted leave to file a second amended complaint.

## II. Count II -- Negligent Infliction of Emotional Distress

To plead a claim of negligent infliction of emotional distress, the plaintiff must prove the traditional **[*9]** elements of negligence: duty, breach, causation, and damages. *Corgan v. Muehling,* 143 Ill. 2d 296, 306, 574 N.E.2d 602, 158 Ill. Dec. 489 (1991). Direct victims of the negligent act need not allege physical symptoms of emotional distress. *Id.*

Defendants argue Count II of the complaint must be dismissed as it fails to specifically allege whether plaintiffs were direct victims or bystanders of the alleged negligent infliction of emotional distress. Furthermore, defendants assert plaintiffs have not specifically pleaded any impact or injury which resulted from the negligent infliction of emotional distress.

We find plaintiffs' allegations in the first amended complaint are sufficient to state a claim for negligent infliction of emotional distress. Plaintiffs allege that defendants had a duty to exercise reasonable care in detaining and arresting plaintiffs. Plaintiffs also assert that defendants breached that duty when they used excessive force in detaining and arresting plaintiffs. Finally, plaintiffs claim that defendants' negligent acts were the direct and proximate cause of plaintiffs' severe emotional distress and physical injury. Having alleged facts sufficient to show the elements of negligent **[*10]** infliction of emotional distress, the defendants' motion to dismiss Count II is denied.

## III. Count III -- Intentional Infliction of Emotional Distress

To plead a claim of intentional infliction of emotional distress under Illinois law, plaintiff must allege: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would do so; and (3) defendant's conduct did in fact cause severe emotional distress. *Lopez v. City of Chicago,* 464 F.3d 711, 720 (7th Cir. 2006). Conduct is considered extreme and outrageous when it goes "beyond all bounds of decency and [is] considered intolerable in a civilized community." *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001).

Defendants assert that the alleged conduct by the Town of Cicero police officers does not constitute extreme and outrageous conduct. We disagree. Plaintiffs' assertions as to defendants' conduct on October 7, 2005 could constitute extreme and outrageous conduct. Several of plaintiffs allegations, taken as true, support this conclusion: (1) defendants' detention of minor **[*11]** plaintiffs for almost nine hours, all the while handcuffed; (2) defendants' denial of parental notification of detention for over four hours; (3) defendants' racial degradation and sexual harassment of the minors; (4) defendants' physical assault of the youngest plaintiff; (5) defendants' intentional holding of an asthmatic minor with inadequate clothing, caused by defendants' removal of minor's sweatshirt, in a room with insufficient heat; (6) defendants' intentional prevention of parent plaintiff from obtaining information regarding his minor children; and (7) defendants' misrepresentation to minors about their father suffering a heart attack in the police station and dying as a result of the minors' "bad acts." Under these facts, assumed to be true for the purposes of this motion, plaintiffs have made sufficient allegations to support a claim for intentional infliction of emotional distress. Defendants' motion to dismiss Count III is, therefore, denied.

## IV. Count IV -- Negligent Hiring and Retention

To state a claim for negligent hiring and retention, a plaintiff must show that the employer knew or should have known that the employee was unfit for the job so as to create **[*12]** a danger of harm to third persons. *Bates v. Doria,* 150 Ill. App. 3d 1025, 1030-31, 502 N.E.2d

454, 104 Ill. Dec. 191 (2d Dist. 1986). An employer may be liable even when the actions by the employee which caused injury to another are outside the scope of his employment. *Id.* at 1031. However, the person injured must show that the employer's negligence in hiring or retaining the employee proximately caused the injury. *Id.*

The Town of Cicero asserts that it is immune from liability for negligent hiring and retention under the Local Governmental and Governmental Employees Tort Immunity Act (the "Act"). We agree. Section 2-201 of the Act states that a public employee in a position of exercising discretion is not liable for an injury resulting from the exercise of that discretion. 745 ILCS 10/2-201 (West 2004). The decision to hire and retain a police officer is inherently a discretionary act. *Johnson v. Mers*, 279 Ill. App. 3d 372, 380, 664 N.E.2d 668, 216 Ill. Dec. 31 (2d Dist. 1996). Therefore, any employee of the Town of Cicero with the authority to hire and retain officers for the Town of Cicero Police Department could not be held liable for any injury caused by that **[*13]** discretionary act. Section 2-109 of the Act states that a local public entity is not liable for the acts of its employees where the employee is not liable. 745 ILCS 10/2-109 (West 2004). Therefore, based on sections 2-201 and 2-109 of the Act, the Town of Cicero is not liable for the discretionary acts of hiring and retention. Consequently, defendants' motion to dismiss Count IV is granted.

## V. Punitive Damages

The Town of Cicero properly asserts that punitive damages are not permitted against a municipality in Illinois. 745 ILCS 10/2-102 (West 2004). Section 2-102 of the Illinois Code specifically states: "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102. Accordingly, the motion to dismiss the punitive damages requests throughout the complaint is granted with respect to the Town of Cicero.

## VI. Walter Collins' and Rhonda Ann Gross' Motions to Dismiss

Defendants properly assert that plaintiffs' first **[*14]** amended complaint does not contain any factual allegations against either Walter Collins or Rhonda Ann Gross. In fact, neither defendant's name appears anywhere in the complaint except for the caption. When a complaint fails to allege specific acts or conduct by the defendant, and the complaint is silent as to the defendant except for his or her name listed in the caption, the complaint shall be dismissed with respect to that defendant. *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974). Therefore, defendants Collins and Gross' motions to dismiss are granted.

## CONCLUSION

For the abovementioned reasons, the motions to dismiss filed by defendants Town of Cicero, Paul Bredemeier, Derek Evitt, and Jerald Rodish are granted in part and denied in part. (## 16, 36, 40, 44). The Town of Cicero's motion is granted as to Counts I and IV of the complaint and granted with respect to the plaintiffs' claims for punitive damages against the Town. The Town of Cicero, Bredemeier, Evitt, and Rodish's motions to dismiss are denied as to Counts II and III of the first amended complaint. Defendants Bredemeier, Evitt, and Rodish's motions to dismiss as to Count I are denied. Defendants **[*15]** Collins' (# 38) and Gross' (# 42) motions to dismiss are granted.

Plaintiffs are given leave to file a second amended complaint by April 20, 2007.

IT IS SO ORDERED.

Wayne R. Andersen

Get a Document - by Citation - 2007 U.S. Dist. LEXIS 19097    Page 43 of 43    Page 6 of 6

Case 1:07-cv-06908    Document 16    Filed 02/20/2008

United States District Judge

Dated: March 15, 2007

Service:  **Get by LEXSEE®**
Citation:  **2007 u.s. dist. lexis 19097**
View:  Full
Date/Time:  Tuesday, February 19, 2008 - 7:13 PM EST

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Off | Help



About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.